IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDP DIVISION

| | | |
|---|---|---|
| JOSH LIMAS, §
Plaintiff, §
§
vs. §
§
TEAM IRON ANGEL REAL ESTATE, §
LLC, §
Defendant §| | CASE NO. 5:20-CV-00203 |

### DEFENDANT, TEAM IRON ANGEL REAL ESTATE, LLC'S
### RULE 12(b)(1) MOTION TO DISMISS
### AND MOTION FOR ATTORNEY'S FEES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Team Iron Angel Real Estate, LLC (Defendant) in the above styled and Numbered Civil Action (Lawsuit) and makes, serves, and files this its Defendant, Team Iron Angel Real Estate, LLC's Motion to Dismiss and Motion for Attorney's Fees (collectively the "Motion" unless specified) and in support thereof, would respectfully show unto the Court as follows:

### I. SUMMARY OF THE MOTION

Plaintiff, Josh Limas (Plaintiff), filed the Lawsuit against Defendant seeking declaratory and injunctive relief, attorney's fees, costs, and litigation expenses because, as he alleges, Defendant violated Title III of the American With Disability Act pursuant to 42 U.S.C. §12182, *et seq.* (ADA).[1] As Plaintiff's theory suggests, Defendant, as the owner of a commercial building located at 1310 Bartlett Avenue; Laredo, Texas 78043 (Property), is liable to Plaintiff because the Property's parking lot does not comply with provisions of the ADA.[2]

---

[1] *See.* Dkt. No. 1, pg. 1
[2] *Id.* at 2, 3.

Defendant files this Motion to Dismiss factually attacking the grounds upon which Plaintiff seeks relief and argues that dismissal is warranted because the Court lacks jurisdiction when there is no case or controversy and Plaintiff lacks standing to sue. Fed. R. Civ. P. 12(b)(1); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981); *White v. Alkitsa Inv. Ltd.*, No. H-20-0951, 2020 U.S. Dist. LEXIS 128039, at *5 (S.D. Tex. July 21, 2020).

## II. FACTUAL BACKGROUND

Two business operate out of Defendant's Property—Federal Tire and Minuteman 10 Minute Lube (Minuteman) located at 1300 block of Bartlett Avenue at the corner of Bartlett Avenue and Corpus Christ Street.[3] Federal Tire is a retail seller and installer of Michelin, Bridgestone and Firestone Tires.[4] At this location, Federal Tire has access to six garage service bays while Minuteman uses two additional service bays where customers' vehicles are parked before being serviced.[5] Federal Tire and Minuteman have operated at this location since the building's construction in 1968.[6] Indeed, when the building on the Property was constructed, the City of Laredo did not require setbacks and there was a lot less traffic on Bartlett Avenue which was then a two-way street.[7]

Due to the Property's corner lot configuration and its construction before property setback requirements, the building used by Federal Tire and Minuteman is very close to both Bartlett Avenue on the building's west side and Corpus Christi Street on the building's north side, leaving very little room for parking considering the access needed to move vehicles in and out of the service bays.

---

[3] *See* Ex. A
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

Plaintiff's complaint alleges the following ADA violations of Defendant's Property[8]:

(1) The Property did not have an ADA compliant parking space.

(2) The Property did not have a Van Accessible Parking Space with an access aisle, and sign.

Plaintiff filed his complaint on or about November 17, 2020 with the return of service indicating Defendant was served on November 27, 2020.[9] Before Defendant's deadline to answer had passed however, Defendant made the necessary changes and modifications to its parking lot, brining it into compliance with the ADA.[10] Contemporaneously with filing its Answer on December 15, 2020, Defendant's modifications rendered the basis of Plaintiff's claims, if one ever existed, without a case or controversy over which the Court can exercise jurisdiction.[11]

The modification highlights only one of Plaintiff's procedural missteps. Plaintiff's failure to provide Defendant any notice that he had problems accessing the Property, if any, deprived Defendant of an opportunity to cure any defects prior to Plaintiff filing suit. At no time before Plaintiff filed his complaint, did he contact Defendant and notify it that he had had any problem accessing the Property, how many times he attempted to access the Property, or what problems he had accessing the Property. Indeed, prior to the complaint being filed, Defendant had no prior notice or knowledge from any person that the Property was not ADA compliant, that anyone had problems accessing the Property, or that they could not access the Property at all.[12] In fact, since the start of the COVID 19 pandemic, no customer is allowed to access the interior building; they must wait outside while vehicles are serviced.[13]

---

[8] *Id.* at pg. 3.
[9] *See* Dkt. No. 1 and Dkt No. 3 respectively.
[10] *See* Ex. B, the Unsworn Declaration of Alejandro Arreguin.
[11] *See* Dkt. No. 5, Defendant's Original Answer
[12] *See* Ex. A.
[13] *Id.*

Defendant has never been cited for any violations for not complying with ADA accessibility requirements.[14] Notwithstanding, as soon as Plaintiff served Defendant with his complaint, Defendant retained the services of Alejandro Arreguin who is a registered Accessibility Specialist, licensed by the Texas Department of Licensing and Regulation.[15] Mr. Arreguin is an inspector of construction projects statewide, ensuring commercial properties comply with Texas Accessibility Standards.[16] Texas Accessibility Standards mirror the ADA. Mr. Arreguin has been a licensed a Registered Accessibility Specialist since 2003 and in his time as a licensed specialist, has performed over 1,000 commercial accessibility standard inspections across the State.

The alleged infractions pointed out by Plaintiff in his complaint either did not exist before he filed his complaint or the issue that did exist has been corrected such that the parking lot was fully ADA compliant before Defendant even filed its answer in the Lawsuit. Accordingly, Plaintiff's complaint should be dismissed as this Court lacks the requisite subject matter jurisdiction.

### III. RULE 12 (b)(1) MOTION TO DISMISS

#### A. RULE 12(b)(1) STANDARD OF REVIEW

Because federal district courts are courts of limited jurisdiction, they may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994). If a federal court lacks statutory or the constitutional power to adjudicate a case, it must properly dismiss the case for lack of subject matter jurisdiction. *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

---

[14] *Id.*
[15] *See* Ex. A and Ex. B.
[16] *See* Ex. B.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a dismissal of a lawsuit if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Courts recognize two types of motions addressing the lack of jurisdiction, "facial" attacks and "factual" attacks. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Elixir Shipping, Ltd. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 267 F. Supp. 2d 659, 661 (S.D. Tex. 2003).

In *Paterson*, the 5th Circuit explained the difference between a "facial" and a "factual" attack as follow:

> Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.

Moreover, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960, 122 S. Ct. 2665, 153 L. Ed. 2d 839 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

And, as the Fifth Circuit holds, if it appears that a plaintiff cannot prove any set of facts that support his claim that would entitle him to relief, a motion to dismiss for lack of subject matter jurisdiction should be granted. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

**B. ARGUMENT**

**Because in the instant case there is no threat of repeated injury, there is no case or controversy, Plaintiff lacks standing, and the Court is without jurisdiction such that the Lawsuit should be dismissed.**

Defendant maintains that Plaintiff's Lawsuit should be dismissed because Plaintiff lacks standing to sue for declaratory and injunctive relief such that the Court lacks subject matter jurisdiction. *White v. Alkitsa Inv. Ltd.*, No. H-20-0951, 2020 U.S. Dist. LEXIS 128039, at *5 (S.D. Tex. July 21, 2020) (dismissing plaintiff's request for a declaratory and injunctive relief for ADA violations because the defendant had remediated the property). The Southern District in *White*, confronted with an extraordinarily similar case factually, is instructive on why Plaintiff's claims should be dismissed. The legal argument below traces the legal analysis used by the court in *White*.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818-819 (1997); *Chicago & G.T.R. Co. v. Wellman*, 143 U.S. 339, 345 (1892) (holding that courts exercise jurisdiction is "legitimate only in the last resort, and as a necessity in the determination by real, earnest and vital, controversy between individuals.").

The United States Supreme Court holds that an element of the jurisdictional prerequisite "case-or-controversy requirement," is that a plaintiff must establish he has standing to sue. *Raines* at 818-819. In *Lujan v. Defenders of Wildlife*, the Supreme Court discussed the three elements of standing:

1. the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.

2. there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly...traceable to the challenged action of the defendant, and not...the result of the independent action of some third party not before the court.

3. it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (further holding that the "party invoking federal jurisdiction bears the burden of establishing these elements) (internal quotations omitted).

Applying the principles of standing to this Case, it is apparent that Plaintiff fails to meet its elements:

1. *Plaintiff cannot show that he suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical*

In failing to meet the first element of standing, Plaintiff does not show a concrete and particularized injury he sustained when he alleges to have visited the Property. Plaintiff generally states that he went to Defendant's Property in "September 2020."[17] He doesn't state why he went to the Property—if he intended to be a customer or sought good or services—just that he "experienced difficulty and discomfort."[18] In making his broad allegations, Plaintiff omits to tell us:

   (a) How his alleged disability prevented him access to the Property;[19]

   (b) What alleged "difficulty and discomfort" he sustained;

   (c) How many times before had he visited the Property and attempted to access the Property, a pattern or practice upon which future injury could allegedly be premised;

   (d) What attempts did he make to access the Property on the date in question;

   (e) How or why did those attempts, if any, fail—what particular disability coupled with the alleged parking violation prevented him access;

   (f) What notice did he give Defendant of his inability to access the Property, asking for modification, before filing suit;

---

[17] *See* Dkt. 1 at pg. 6.
[18] *Id.*
[19] 42 USCS §12102(1)(A) (definition of disability as "physical or mental impairment that substantially limits one or more of an individual's major life activities."; *PGA Tour v. Martin*, 532 U.S. 661, 664 (2001).

(g) Whether he intended to visit Federal Tire or Minuteman;

(h) How the alleged violations deny Plaintiff the "ability to enjoy the goods, services, facilities, privileges, advantages, and accommodations at either Federal Tire or Minuteman,"

Indeed, Plaintiff does not provide any concrete and particularized evidence that he suffered actual or imminent injury. At most, all he provides are general descriptions of his alleged disability and claims that misrepresent the characteristics of the parking lot—out of the five photos he took, only one of the photographs show parking spaces that belong to Defendant.[20] The other photographs either show a neighboring parking lot, the area in front of the service bays where parking by customers is not allowed, or sections of the parking lot where cars are prohibited from parking because of the dangerous need to reverse into traffic as they exit the building.[21]

2. *Because Defendant made a modification to the Property, it is no likely that any future injury can be redressed by a favorable decision.*

Significantly germane to this Lawsuit, courts hold that "if the plaintiff seeks equitable relief," standing requires that "there is a real and immediate threat of repeated injury." *Deutsch v. Annis Enters.*, 882 F.3d 169, 173 (2018) (affirming the dismissal of an ADA claim based on lack of standing). In *Deutsch*, the U.S. Supreme Court found dispositive that the claimant did not show how the alleged ADA violations would negatively affect his day-to-day life. *Id.* The record showed that he had only visited the locations once and there was no evidence that he had any intent to return. *Id.*

The threat of a repeated injury is required when a plaintiff seeks equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 (1983) (holding that "[past] exposure to illegal

---

[20] *See* Ex. A.
[21] *Id.*

conduct does not itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."). Merely having suffered an injury in the past is not enough; the plaintiff must show a "real or immediate threat that the plaintiff will be wronged again." *Id.* at 111.

The Southern District of Texas holds that since Defendant has remedied the Property, Plaintiff cannot show that his day-to-day activities will be affected by the Property in its present state. Accordingly, the Court must dismiss the Lawsuit for lack of a case or controversy. *White* at \*6. Due to the nature of Plaintiff's claim in the form of equitable relief, there is no real or immediate threat of repeated injury. *Deutsch* at 173; *Lyons* at 103, 111.

Defendant, without having been given any prior notice of any problems with the Property before being sued, immediately took action to have a registered accessibility specialist inspect the Property to determine what, if anything, was not in compliance with the ADA.[22] Mr. Arreguin remediated the issue and added a van accessible parking lot, signage, and an access ramp that meet the requirements of the ADA.[23] Indeed, most significant and detrimental to Plaintiff's equitable relief, the issue no longer exists.[24] *White* at \*7, \*8. There is no evidence that Plaintiff's day-to-day activities will be affected by the Property. *Id* at 6.

Irrefutably, under the 12(b)(1) standard adopted by the Sothern District in *White*, applicable in ADA parking lot compliant cases in which the defendant, like Defendant, has remediated the alleged issues, Plaintiff's Lawsuit should be dismissed. There is no case or controversy that the Court can adjudicate, Plaintiff lacks standing, and the Court lacks jurisdiction.

---

[22] Ex. A.
[23] *See* Ex. B.
[24] *See* Ex. A and Ex. B.

### C. MOTION FOR ATTORNEY'S FEES

28 U.S.C. §1927 allows the Court to award attorney's fees when an attorney's conduct multiplies the proceedings unreasonably and vexatiously. *White* at *8-9. The Fifth Circuit holds a district court should award the prevailing defendant attorney's fees if the Plaintiff's actions were "frivolous, unreasonable, or without foundation." *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (holding that "[i]n determining whether a suit is frivolous, the district court should look to factors such as whether the Plaintiffs established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial."). Likewise, the Fifth Circuit holds that under Section 1927, the fees, expenses, and costs associated when there is a "persistent prosecution of a meritless claim." *Pease v. Pakhoed Corp..*, 980 F.2d 995, 1001 (5th Cir.1993). Additionally, in awarding attorney's fees, the Court may also consider whether there have been repetitious or excessive filings. *Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988).

As of March 1, 2020, Plaintiff has filed 45 identical ADA cases in the Southern District of Texas, Laredo Division. In all of the cases, Plaintiff is represented by attorney Bruce Tharpe, the same attorney representing the plaintiff in *White*. Needless to say, attorney Tharpe is well versed in ADA cases similar to the type filed against Defendant and the defensive arguments made by defendants similarly situated. And while the *White* court did not sanction Mr. Tharpe, the type of vexatious litigation, based on tenuous facts, continues to be filed by counsel. *See White* at *8-9.

Plaintiff's counsel's *modus operandi* is to file multiple cases and then seek to rapidly settle them—a quick bang for the buck, so to speak. Of the 45 cases filed, fourteen have been rapidly settled.

In this Case, Defendant received a demand letter from Plaintiff two days after filing its answer.[25] There was never any such prior notice before a suit was filed. The demand letter states that while "our initial demand is $15,000" in the interest of settlement, "we will agree to reduce our demand to $10,000."[26] And while the demand letter does ask that Defendant make "reasonable modifications" so as to "comply with the ADA," it appears as a secondary request without particularizing specifics. Indeed, nowhere does the letter state when Plaintiff visited the Property, what was the purpose of his visit, what issues he had in accessing the Property, if he had attempted to access the Property before, how the modifications would benefit Plaintiff, or that he even intended to return.

Communications between counsel make clear that Plaintiff was aggressively seeking a quick settlement before the Parties held the initial pretrial scheduling conference.[27] At one point, Plaintiff's counsel even suggested grouping together several of Defendants that defense counsel represents in separate ADA cases filed by Plaintiff.[28] And while there is admittedly nothing wrong with working toward a settlement, it does further point to the fact that the thrust, the purpose of this litigation is to heavily push for a quick, cash settlement, with a modicum of regard for the modifications.

Defendant has currently expended $2,873.75.[29] Based on the foregoing, Defendant asks that the Court award these fees against Plaintiff.

---

[25] *See* Ex. C,
[26] *Id.*
[27] *See* Ex. D.
[28] *Id.*
[29] *See* Ex. E.

In this Case, Defendant received a demand letter from Plaintiff two days after filing its answer.[25] There was never any such prior notice before a suit was filed. The demand letter states that while "our initial demand is $15,000" in the interest of settlement, "we will agree to reduce our demand to $10,000."[26] And while the demand letter does ask that Defendant make "reasonable modifications" so as to "comply with the ADA," it appears as a secondary request without particularizing specifics. Indeed, nowhere does the letter state when Plaintiff visited the Property, what was the purpose of his visit, what issues he had in accessing the Property, if he had attempted to access the Property before, how the modifications would benefit Plaintiff, or that he even intended to return.

Communications between counsel make clear that Plaintiff was aggressively seeking a quick settlement before the Parties held the initial pretrial scheduling conference.[27] At one point, Plaintiff's counsel even suggested grouping together several of Defendants that defense counsel represents in separate ADA cases filed by Plaintiff.[28] And while there is admittedly nothing wrong with working toward a settlement, it does further point to the fact that the thrust, the purpose of this litigation is to heavily push for a quick, cash settlement, with a modicum of regard for the modifications.

Defendant has currently expended $2,873.75.[29] Based on the foregoing, Defendant asks that the Court award these fees against Plaintiff.

---

[25] *See* Ex. C,
[26] *Id.*
[27] *See* Ex. D.
[28] *Id.*
[29] *See* Ex. E.

## IV. PRAYER

**WHEREFORE PREMISES CONSIDERED** Defendant, Team Iron Angel Real Estate, LLC prays that upon the Court's thoughtful consideration, the Court grant Defendant' Motion to Dismiss, Motion for Attorney's Fees, and for any and all such further relief, both general or special, at law or in equity, to which the Court may find Defendant is justly entitled.

Respectfully Submitted,

/s/ J. Francisco Tamez
J. Francisco Tamez
SBN: 24033257
Federal I.D.: 34713
Law Office of J. Francisco Tamez, PLLC
7913 McPherson Road, Ste 103
Laredo, Texas 78045
Telephone No.: (956) 753-0003
Facsimile No.: (956) 753-0004
Electronic Mail: ftamez@txlawfirm.net
**Attorney for Defendant,**
**TEAM IRON ANGEL REAL ESTATE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the ___2nd___ day of March 2021, a true and correct copy of the foregoing document was provided to all counsel of record by efile pursuant to the Federal Rules of Civil Procedure.

Law Office of R. Bruce Tharpe, LLC
R. Bruce Tharpe
PO Box 101
Olmito, Texas 78575
Telephone No.: (956) 255-5111
Electronic Mail: questions@brucetharpelaw.com

/s/ J. Francisco Tamez
J. Francisco Tamez